UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALVIN EARL BROWN,                Case No. 23-12784
     Plaintiff,
     v.                       Linda V. Parker
                            United States District Judge
RALPH GODBEE, DETROIT
POLICE DEPARTMENT,
DETROIT POLICE OFFICERS     Curtis Ivy, Jr.
ASSOCIATION, and PAUL        United States Magistrate Judge
STEWART,
     Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS (ECF No. 15) AND MOTION TO
DISMISS (ECF No. 18)**

## I.    PROCEDURAL HISTORY

Plaintiff Alvin Earl Brown filed this *pro se* complaint on November 1, 2023.

(ECF No. 1).  Defendants Detroit Police Department ("DPD") and Ralph Godbee

filed a motion for judgment on the pleadings on December 4, 2023, and Plaintiff

responded.  (ECF No. 15, 23).  Defendant Detroit Police Officers Association

("DPOA") then filed a motion to dismiss on December 18, 2023.  (ECF No. 18).

The motion is fully briefed.  (ECF Nos. 24, 26, 27).

This matter was referred to the undersigned for all pretrial matters.  (ECF

No. 5).

For the reasons discussed below, the undersigned recommends that Defendants' motion for judgment on the pleadings and motion to dismiss be granted.

## II.   BACKGROUND

Plaintiff was a patrol officer in the Detroit Police Department for 13 years. (ECF No. 1, PageID.7).  He suffered from "one of several believed stress-related injuries/illnesses" while on duty on May 15, 2000.  (*Id.*).  He went to Cottage Hospital, the department clinic, for treatment, and was treated for headaches and high blood pressure and was diagnosed with depression and dysthemia.  (*Id.* at PageID.9).  He was placed on medical leave for 21 days.  (*Id.* at PageID.7).  On June 5, 2000, after 21 days, he returned to work and applied for disability based on depression from his "job-related circumstances."  (*Id.*).

On June 6, 2000, Plaintiff suffered from a second episode of depression.  (*Id.* at PageID.9).  He was assigned a shift as a beat officer even though his department seniority was much higher than other officers on that shift.  (*Id.*).  Lieutenant McIsaac told him "I don't like you" and assigned the shift.  (*Id.*).  Plaintiff filed a grievance against Lieutenant McIsaac.  (*Id.*).

On September 25, 2000, Plaintiff applied for duty-related disability benefits. (*Id.* at PageID.10).  He received notice of denial of his request on November 5, 2009, and was told he was "not capable of returning to full duty."  (*Id.*).  Plaintiff

appealed the decision on November 13, demanding to be removed from disability
leave and returned to full duty. (*Id.*). A panel of department professionals said
Plaintiff's "suffering is not such that it relates to his duty as a police officer or
makes him incapacitated to work." (*Id.* at PageID.7-8). On January 7, 2010, the
Police and Fire System Executive Secretary, Walter Stampor, told Plaintiff he was
not disabled to be considered incapacitated from his duties and that he should
"contact Police Personnel Immediately to make the necessary arrangement for your
re-employment." (*Id.* at PageID.10). This letter was also sent to then-current
Chief of Police of the City of Detroit, Warren Evans. (*Id.* at PageID.11). The
board of trustees removed Plaintiff from the disability payroll and directed he be
returned to work. (*Id.*).

Ralph Godbee, Jr. replaced Evans as the new chief of Police. (*Id.*). On
August 11, 2010, Plaintiff received a notice from Godbee which stated his request
for reappointment had been denied based in part on his "employment and financial
histories." (*Id.*). The decision could not be appealed. (*Id.*).

Plaintiff contacted DPOA on February 11, 2011 for "an issuance of a
grievance to appeal the unjust termination from the police department." (*Id.* at
PageID.11-12). At the time, DPOA Vice President Paul Stewart was under
criminal indictment and was arrested. (*Id.*). DPOA president, Marty Bandemer

was also referenced in the indictment, though he was not charged.  (ECF No. 1, PageID.12).  The union did not represent Plaintiff or file an appeal.  (*Id.*).

On the final page of his civil cover sheet, Plaintiff selected Americans with Disabilities Act 42 U.S.C. § 12112-12117 ("ADA") as the basis for jurisdiction. (*Id.* at PageID.3).  He also brings an apparent breach of duty of fair representation claim against the DPOA.

 In their motion for judgment on the pleadings, DPD and Ralph Godbee argue Plaintiff did not exhaust his exhaustive administrative remedies before the lawsuit, that his claim is barred by the statute of limitations, and that he failed to state a claim.  (ECF No. 15).  In its motion to dismiss, DPOA argues Plaintiff fails to state a claim for relief because the complaint lacks allegations that the DPOA helped decide the alleged adverse employment actions or that it did not satisfy its statutory duty of fair representation, that Plaintiff's claim is time-barred and that Plaintiff failed to exhaust administrative remedies.  (ECF No. 18).

## III.    ANALYSIS AND RECOMMENDATIONS

Because many of the parties' arguments are substantially the same, both motions will be considered together.

### A.    Governing Standards

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is substantially the same as that for a motion to dismiss under Rule

12(b).  *See Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) (citations omitted).

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

A complaint must contain "'either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1998)

(internal citations omitted).  To state a prima facie claim under the ADA, Plaintiff

must show that "(1) [he] has a disability; (2) [he] is otherwise qualified; and (3)

[he] was being excluded from participation in, denied the benefits of, or subjected

to discrimination under the program because of [his] disability."  *Anderson v. City*

*of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

     B.    <u>Administrative Remedies and Statute of Limitations</u>

    All Defendants argue Plaintiff's ADA claims are time barred and that

Plaintiff failed to exhaust administrative remedies.  (ECF Nos. 15, 18).  DPOA also

argues Plaintiff's fair representation claims are time barred.  (ECF No. 18).

    "[A] claimant who wishes to bring a lawsuit claiming a violation of the

ADA must file a charge of discrimination with the EEOC within 300 days of the

alleged discrimination."  *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299,

309 (6th Cir. 2000).  "Under Title VII and thus under the ADA, a plaintiff must

commence his civil action within ninety days of receiving a right-to-sue letter from

the EEOC."  *Clark v. Nissan Motor Mfg. Corp. U.S.A.*, 1998 WL 786892, at *3

(6th Cir. 1998); *McGhee v. Disney Stores*, 53 F. App'x 751, 752 (6th Cir. 2002).

"An employee may not file a suit under the ADA if he or she does not possess a

right-to-sue letter from the EEOC because he or she has not exhausted his or her

remedies."  *Parry*, 236 F.3d at 309.  "[T]he failure to obtain a right-to-sue letter is

not a jurisdictional defect; rather the right-to-sue letter is a condition precedent." *Id.* (citations omitted).

Plaintiff was aware of his responsibilities to obtain a Notice of Right to Sue letter and to file a charge of discrimination. (ECF No. 1, PageID.3). On his pro se complaint, he conveyed the EEOC "has not issued a Notice of Right to Sue letter," and that he "[n]ever [f]iled [c]harges within time alloted [sic] time requirement." (*Id.* at PageID.5). He did not exhaust the necessary administrative remedies.

Additionally, Plaintiff's ADA claim is now time barred. Plaintiff's alleged conduct began on May 15, 2000, when he experienced a stress-related injury or illness while on duty. (*Id.* at PageID.7). The alleged act of discrimination, his termination, occurred on August 11, 2010. (*Id.* at PageID.12). Given his complaint was filed on December 4, 2023, his claim was filed outside the statutory period. As Defendant DPD and Godbee argue, Plaintiff needed to file a charge of discrimination with the EEOC by June 6, 2011 in order to be within the statute of limitations.

And Plaintiff is required to commence his suit within ninety days of receiving a right to sue letter from the EEOC. *Clark*, 1998 WL 786892, at *3. Plaintiff did not obtain a letter from the EEOC. His failure to act within the statute of limitations bars his ADA claims.

In his responses to both motions, Plaintiff adds that he was evaluated by the City of Detroit up until December 19, 2009. (ECF No. 23, PageID.259), (ECF No. 22, PageID.188). Even if the last discriminatory act were in 2009, Plaintiff is still barred by the statute of limitations, as his complaint was filed more than 300 days after this action and he did not obtain a right-to-sue notice.

Plaintiff's breach of duty of fair representation claim is also time-barred. Plaintiff does not specifically allege the law under which this argument is made. Typically, if a union breaches its duty of fair representation, an employee may bring a claim against the union under the Labor Management Relations Act, 1947 § 301. *Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235 (6th Cir. 1993). A six-month statute of limitations applies to such cases. *Id.*; *Hollingsworth v. Ford Motor Co.*, 644 F. App'x 496, 502 (6th Cir. 2016). It is measured "from the date on which the employee knew or should have known of the union's final actions constituting the alleged violations. *Id.* (internal citations omitted).

Plaintiff filed his union grievance on February 11, 2011. (ECF No. 1, PageID.11-12). By March 8, 2011, Plaintiff was attempting to hire lawyers for legal assistance, indicating he realized the union would not represent him. (*Id.*). It has since been thirteen years. This claim is also time-barred.

Equitable tolling is also not appropriate in this case. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000) ("The

federal courts sparingly bestow equitable tolling . . . [t]ypically, equitable tolling only applies when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.") (internal citations omitted).  "[G]arden variety neglect" is not an excused by equitable tolling.  *Johnson v. U.S. Postal Servs.*, 64 F.3d 233, 238 (6th Cir. 1995) (*citing Irwin v. Dep't of Veterans Aff.*, 498 U.S. 89, 96 (1990)).  Given Plaintiff's knowledge of this requirement, and his subsequent failure to file a charge, equitable tolling does not apply.

The claims should be dismissed.

C.    Failure to State a Claim for Relief

Even if the claims were not time-barred, DPD, Godbee, and DPOA all correctly argue Plaintiff does not allege they terminated his employment for discriminatory reasons.  (ECF No. 18, PageID.174).

Plaintiff claims he was terminated due to his depression and dysthymia. (ECF No. 1, PageID.7).  That said, he does not bring allegations – either direct or inferential – that indicate his employment was terminated for discriminatory reasons.

Plaintiff was initially told he was incapable of returning to work.  (*Id.* at PageID.10).  On appealing this decision, Plaintiff was found not "disabled to be medically considered incapacitated to perform your duties" on January 7, 2010.

9

(*Id.*).  That day, then-current chief of Police, Warren Evans received a copy of this notification and directed he be returned to work.  (*Id.* at PageID.11).  Plaintiff attended a medical appointment and was cleared to return to work on January 13, 2010.  (*Id.*).

Seven months later, and under the guidance of the newly installed Chief of Police, Ralph Godbee, Jr., Plaintiff was terminated "in part . . . [based on his] employment and financial histories."  (*Id.*).  Though Plaintiff "believes that the newly installed Chief of Police . . . fired him . . . for the issue of non-duty disability depression," his allegations do not suggest this.  (*Id.*).  Primarily, Plaintiff has not established that he has a disability.  His facts indicate he was medically cleared for work and not disabled.  Plaintiff has also not alleged that he was otherwise qualified for the position, nor does he show that he was terminated because of his disability.  It is unclear whether Godbee was even aware of his depression in making his determination.  Accepting Plaintiff's facts as true, it does not appear that Defendants considered Plaintiff's depression in terminating him.  Given that Godbee stated Plaintiff was terminated because of his "employment and financial histories," among other considerations, it is not reasonable to infer Plaintiff was terminated because of a disability.  Plaintiff has not stated an ADA discrimination claim.

Plaintiff also alleges DPOA failed "to represent him as an active fee-paying member in the solidarity of the Association." (*Id.* at PageID.17). Plaintiff allegations about the DPOA are sparse. He states "DPOA Vice President Paul Stewart never filed the Union grievance on his behalf because Steward was under criminal indictment for corrupt practices within the Union Association." (*Id.* at PageID.12). He then says his case was "left without notice that the Union was not representing him, leaving him neglected, abandoned, and unfinished," and that "[t]here is no grievance file and no direct appeal prepared on his behalf." (*Id.*).

"A union breaches its 'statutory duty of fair representation . . . when [its] conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'" *Damphousse v. Great Lakes Steel*, 219 F. Supp. 2d 833, 837 (E.D. Mich. Aug. 14, 2002). A "[u]nion's actions are arbitrary only if, in light of the factual and legal landscape at the time of union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Id.* Actions are "improperly discriminatory if they are 'intentional, severe, and unrelated to legitimate union objectives' . . . [and] are in bad faith if made with improper intent or motive." *Bowerman v. Int'l Union, Aerospace and Agric. Implement Workers of Am., Loc. No. 12*, 646 F.3d 360 (6th Cir. 2011) (internal citations omitted). Also, to recover for a breach of the duty of fair representation, the plaintiff must demonstrate injury. *See Spellacy v. Airline Pilots*

*Ass'n-Int'l,* 156 F.3d 120, 126 (2d Cir.1998).  Plaintiff does not allege sufficient facts to support his claims.

Beyond cursory statements that DPOA failed to represent him, Plaintiff does not offer any evidence to illustrate why they failed to do so.  He also does not allege they engaged in any form of discrimination, that their decision was arbitrary, or that their decision was in bad faith.  He only alleges they failed to file his grievance because DPOA Vice President "was under criminal indictment for corrupt practices . . . "  (ECF No. 1, PageID.12).  This may be so, however, it does not demonstrate bad faith, discrimination, or arbitrary judgment.  Plaintiff has failed to state this claim.

Defendants' motions to dismiss and for judgment on the pleadings should be granted.

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendant DPOA's motion to dismiss and Defendants DPD and Godbee's motion for judgment on the pleadings be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any additional

right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 5, 2024.                          s/Curtis Ivy, Jr.
                                              Curtis Ivy, Jr.
                                              United States Magistrate Judge


**CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on April 5, 2024.

s/Sara Krause
Case Manager
(810) 341-7850